Good morning, your honors. May it please the court. Gene Voroviev on behalf of the appellant. In this case, my client, a low-level participant in a RICO enterprise, in fact, it's an enterprise he may have joined when he might not have reached age 18, made an open plea to one count of RICO conspiracy and has received a sentence that we believe exceeds the statutory maximum that's allowed by the plea and the facts admitted in the plea colloquy and for that reason we believe he's entitled to a new sentencing hearing. And so you say it's a statutory maximum? Yes, your honor. The statutory maximum of 20 years, which is a default punishment for RICO conspiracy unless the plea was predicated on racketeering acts or actually in this case agreement to commit racketeering acts that are punishable by punishment of life in prison. Well, that's the whole question, right? Right, right. Our position is that the plea is not based on one of those acts. As a part of his plea colloquy, my client admitted that he committed at least two of the three racketeering acts, which is drug distribution, money laundering, and acts of violence and intimidation. The plea colloquy did not specify which specific two acts the plea was based on. But the factual basis offered up to which your client agreed mentioned all three of them, didn't it? Well, I believe the only thing that the factual basis mentioned was that he agreed to being a rent collector. And I don't disagree that it could potentially be an activity that could be construed as aiding and abetting drug trafficking, but by itself that fact is not susceptible to an ambiguous interpretation and that means he's admitting that one of the activities is drug trafficking. Because by itself all he's admitting to is that he's collecting money that's as consistent with extortion as it would be with helping the narcotics conspiracy. And in fact, I believe that it's not good either way. It's not an either-or proposition. It can be both. Right. No, I don't disagree. It could be both. Well, look at the plea colloquy. Look at the factual basis that was offered. How is it not touching all three bases? Well, all three bases were mentioned, but I believe that the government's burden was to obtain an unequivocal admission. What was your client's answer? Yes to part? I'm sorry? What was your client's answer to the question? Well, he was never asked the question which specific two acts you were admitting. Question. Do you agree with the government's offer of proof? Answer. Yes. Right. No, that's not true. What's ambiguous about the answer yes? No, there is nothing ambiguous about the answer yes, but he was never asked the question of which specific two acts is your plea based on. He was given a narrative, and he said yes. He didn't say yes to part. He said, well, not that part. He said yes. Right. I think the best you can say about the colloquy, you can possibly interpret it as touching all three. Again, it's not an unreasonable interpretation. I guess I'm wondering how can you interpret this as anything else? I think it could be interpreted just as being based on extortion, or which acts of violence, intimidation, which I read as extortion, and money laundering, just as well as, you know, money laundering and drug traffic, or money laundering, I'm sorry, and drug traffic and extortion. But he says yes to all three, right? Well, he says yes to the factual basis that the government read at the hearing. But he's not ever asked a specific question, which two acts are you, is racketeering, is your plea based on. I don't think he's ever asked that specific question. And so his answer yes doesn't answer those two specific, I mean, that particular question. What is the specific question that he answers yes to? What is the? Well, I think at the end of the proffer. What I just read, the court, do you agree with the government's offer of proof? Question mark. Yes. Yes. Right. The answer is yes. Yes. So he answered yes to the factual proffer as read by Mr. O'Leary at the change of plea hearing. But my position is that that proffer does not establish unambiguously that the two activities that the plea is based on is agreement to that. Why doesn't the yes cover everything, which covers all three? I mean, I think it could. Again, I don't disagree that there is a way to read this record to say that it covers all three. This is plain error review, right? That's correct, Your Honor. Okay. So why should we not read it that way? Why shouldn't the district court be considered to have heard it that way? Well, because it is my understanding of the plain error rule that the court looks to see if the error from a legal standpoint is plain. In this case, Apprendi has been Supreme Court law. So the court should have said, do you agree with the factual basis and everything stated in it? Well, I think the court — I mean, I'm just wondering. You know, you say it's plain error. The court should have done something else. What is there something else it should have done? I think the court, Judge Pregerson should have — or either the prosecutor or Judge Pregerson should have asked, do you admit a racketeering act, A, B, or C? Because in this case, the government has offered three possibilities. I think that's a question that should have been asked because in this case — I mean, you say possibilities, but they said this is our alpha proof. If we were required to do so, we could put in evidence of these things. And I think one additional item that I would urge the court to keep in mind, that this was an open plea. So this is not a situation where you would normally have with a guilty plea, where you would have a plea agreement, you know, counsel would go over. By the time you would have the change of plea hearing, you would have — it would be a much more orderly process. I think this was a bit more ad hoc because it was an open plea. And I think that may have placed more of a duty on the judge and the prosecutor to spell out, okay, this is what the punishment is. For a conspiracy, it's 20 years unless one of the racketeering acts is punishable by life. You don't even have that advisement here. Nowhere in this plea colloquy my client is even informed that the government would have to prove his exposure to a default punishment above 20 years. He's never told he has a jury trial right on that issue. So, again, to the extent the plea colloquy is ambiguous as to which acts he's admitting, I think these are the facts that I think counsel against interpreting it as an unambiguous admission that one of them was an act that triggers life. Well, which one couldn't have been proven? I mean, this is a plain air review. How would it have really made any difference? Is there anything the government wouldn't have been able to prove? So you're asking me about the admission or are we going now beyond into the sentence? Well, I'm saying here it's plain air. You've got to tell me it would have made a difference. Right. Let's accept for a moment your proposition that he only conceded two out of the three, but we don't know which two. What is it the government's not going to be able to prove? Isn't it your obligation to show that it would have made a difference? And I can't figure out how it would have made a difference anyway. Well, I think the government, it's not clear beyond reasonable doubt that the government would have been, oh, I'm sorry, because we're on plain air. At least there was a reasonable chance the government wouldn't have been able to prove that my client admitted that it was drug trafficking in the amount of 200. Leaving aside whether your client admitted, let's assume for a moment your client somehow thought he was only saying yes to two and not to the third, even though he didn't say anything like that. But the government can still prove all three, as best I can tell from the record, and I don't see how your client's proven anything different or given us a reasonable possibility of thinking the government couldn't have lived up to the offer of proof. My understanding of the record in the sentencing proceeding was that the PSR basically mirrored, if not directly quoted, the plea colloquy. So in the PSR. And there was no objection to that? Right. So we got plain air twofold. I mean, it came up with a plea colloquy. It came up at sentencing. We never heard anything from your client about how I didn't do one of those three things, whichever it was, we don't know. And now we don't hear anything about why your client could have successfully beaten the rat for one of the three things. So how is this plain air? Let me answer it in two parts. Number one, if you put for a moment, put aside the fact that there is no objection, just look at what was presented. There is no evidence that my client is actually involved in any aspect of drug trafficking. Because, frankly, you don't have to look further than the government, the document that the government introduced on appeal. He's collecting money, right? Well, he's collecting money, that's true. So how is that an aspect of drug trafficking? I understand collecting money is part of the deal. You know, this is why people sell drugs, to collect the money. They don't do it out of charity. Right. No, but my understanding is of this particular RICO enterprise that it engaged in both drug trafficking and extortion. So collecting money could just be racketeering. You know, they're shaking down any business. I think he collected for extortion but not for drug trafficking. Well, he could, you know, it could be that. You know, I'm, frankly, I don't read the record as there being any evidence. It's your burden to show that this would make a difference. It's your burden to show that had the government put this proof, it couldn't have proven it. But I would urge the court to look at the plea agreement that the government submitted from two street-level dealers. It discusses a very detailed, you know, allegation of who is involved in a drug conspiracy. There is no mention of my client in there. It's in the government's, I believe they're sealed, supplemental sealed set experts record. They were from the street-level dealers. They named a long list of who was participating with them. My client is not mentioned in any aspect of it. If you look at the indictment, the government has never alleged my client's participation in any acts, even remotely related to something, you can definitely say this is drug trafficking. All we know is that he's collecting money. And I would submit to the court that because that act is as consistent with extortion as it is with aiding and abetting drug trafficking, there was at least a reasonable chance that had this been, frankly, just been given to a jury, they might have found otherwise. They might have found that the two acts on which this plea, the two acts that he agreed to participate were extortion and money laundering, not necessarily drug trafficking. You've got about four minutes. You want to save them? Yes, yes, Your Honor. We'll hear from the government. Good morning, and may it please the court, Assistant United States Attorney Kevin Lally on behalf of the government. Before addressing the primary aspects of the government's argument, I just want to address a few of the comments made by counsel. First of all, right before the factual basis was read, the district court, and this is at ER 217, advised the defendant that after the offer of proof has been summarized for you, I will ask you if you agree with it. The factual basis was then read. He was then asked if he agreed with it. He said he did, and the government would submit that it was in its entirety. Did the factual basis say two out of the three? No, Your Honor. And getting to the factual basis, the claims that the factual basis only are left at ambiguous as to what the defendant was pleading to, the government would dispute that representation. What happened is in the beginning of the factual basis, and it's not a one-paragraph actual basis, it's about seven, it starts out and it lays out just basic RICO law. And so it talks about the enterprise and the fact that, and it wasn't specific as to this particular defendant, it just said that the government would prove that as part of the enterprise, the participants to the enterprise, the members and associates, would agree that a co-conspirator would commit at least two of the racketeering acts discussed, which is just sort of a standard statement of racketeering law. But we then, the factual basis then got a lot more particular as to the particular racketeering enterprise and their activities, and it went in and it explained in the following paragraph how the enterprise was engaged in narcotics trafficking, and they controlled the narcotics trafficking occurring within their territory, that they taxed the individuals who were engaged in the narcotics trafficking through the collection of rent, and that they laundered those proceeds, talking specifically about the drug trafficking and then the laundering of the money. But then we talk about the defendant, and it gets even more specific, and it is completely unequivocal as to what the defendant's involvement is, and then that involvement includes drug trafficking, because it says, and I'm quoting, the defendant knowingly joined the CLCS organization's racketeering conspiracy by no later than 2002, and in doing so, agreed to advance the interests of the CLCS organization by ensuring the continued operation of its longstanding drug trafficking and money laundering operations, as clear as you could be. It then goes on further. Defendant did so by being a rent collector who assisted in the collection of drug proceeds from drug dealers operating within CLCS territory, and by engaging in acts of violence and intimidation that helped the CLCS organization control its territory and further the drug trafficking operation through a culture of fear. It then goes on to say that the defendant, in addition to what he was doing, knew that other members and associates of the organization were advancing the interests of the organization to include, and were doing so on a daily basis, to include the continued operation of the CLCS organization's drug trafficking operation. So if I understand correctly, when the government makes that kind of proffer, it is representing to the court that it has evidence and witnesses that could present proof of that if necessary. Absolutely, Your Honor. So if the defendant disagrees with any of that, presumably the government could be given a chance to present actual witnesses, right? And, in fact, we did. Again, some defendants in this case who didn't agree with it went to trial and were all convicted of the various offenses for which there was evidence of drug trafficking and rent collections in spades, as well as other crimes that had statutory maximum offenses of life in prison to include murder. And it was in part that, it was in part because the evidence was overwhelming, and because the quantity of drugs, here the defendant admitted to 2.8 kilograms, but as the government noted in its sentencing memo, that that was a pittance compared to what was actually distributed. And, in fact, at trial we proved up over 180 kilograms of crack cocaine distributed by this enterprise in a period that largely overlapped the period that the defendant admitted to in his plea agreement. There was a two-year period where that didn't overlap. But hundreds, you know, over 100 kilograms of crack cocaine. So it was something that we certainly had the ability to prove. Thank you. And so as to the apprenticeship. I think we've heard enough. On all issues, Your Honor? I think so. Thank you. Okay. We have a little time left for a bottle. I wanted to go back to Judge Reinhart's question about the at least two acts. If you go on page 218, it says, as clear as I could read, and as part of this conspiracy, the government shows that the CLS organization and its participants agreed that a co-conspirator would commit at least two of the above-described acts in furtherance of its organizational interest. And then it goes on with the language that Mr. Lally read, but nowhere do we get to a point where it says this defendant had agreed that either he personally would commit an act that's punishable by life imprisonment or that a co-conspirator would do so. At best, what we're doing is we're trying to argue it by extrapolation. And, you know, I don't doubt Mr. Lally's sincerity that the government could have, you know, proven that he represented the government could have proven these various things. The problem is we didn't. Why shouldn't we believe that? This is plein air reviews, so don't you have to persuade us to the contrary? Well, right. But I believe that my burden is not to persuade you to all certainty. It's to create. Where's the uncertainty that you couldn't, that your client could beat a rap with regard to drug trafficking? Because all we know at this point is that he collected money. We don't know when he agreed whether. He had a lawyer, right? Right. He had a lawyer. And the lawyer could have just said, don't agree to it. Right. Don't agree to some of it. There's no evidence or claim of ineffective assistance of counsel or anything like that. Well, Your Honor, unfortunately at this point, you know, and again, I will represent to you something that's not in the record. I can't even investigate the possibility of ineffective assistance of counsel because there is nothing pending. And when I ask counsel. This is what's before us. Right. There is nothing before us on this record suggesting ineffective assistance. I mean, you might be able to develop a claim like that later on, but there's nothing here. He's counseled. The government lays out its facts. He doesn't hedge. He doesn't say some, yes, not all. He doesn't say I disagree with some of it or all of it. He just says yes to the court's question. Now, how is the court expected? How is a district judge, you know, if you're going in the plain air, how is a district judge, absent an objection, absent a statement by the defendant that there's some dispute with some of this stuff, how can we expect the district court to guess that, oh, yes, he needs to be asked more questions? Because it's an open plea. And because, Rico, frankly, I will submit it's a very difficult area of the law. Because it's a difficult area of the law, because it's an open plea, I think this is a case where, frankly, the judge should have required a more clear enunciation as to what the government would be required to prove. Because I think the government hadn't completely laid out what would be required to prove in regard to punishment. Okay. Thank you. I think we understand your position. Yes, Your Honor. Since I have a minute, could I please talk about the last issue in my brief, which is the role enhancement that wasn't imposed, but the court imposed the sentence with a view of the. . . Generally, we are on rebuttal on the issues that have been raised. I understand. Thank you. Thank you. Case is argued. We'll stand submitted.
judges: Kozinski, Reinhardt, Clifton